IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMIR ELMORE, | § | |
| | § | No. 597, 2014 |
| Defendant-below, | § | |
| Appellant. | § | Court Below: |
| | § | Superior Court of the |
| v. | § | State of Delaware, in and for |
| | § | Kent County |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 1404013039B |
| Plaintiff-below, | § | |
| Appellee. | § | |

Submitted:  May 13, 2015
Decided:  June 9, 2015

Before **STRINE**, Chief Justice, **HOLLAND** and **VALIHURA**, Justices.

### **O R D E R**

This 9th day of June 2015, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     Appellant Amir Elmore ("Elmore") was convicted of Possession of a Firearm by a Person Prohibited ("PFBPP") and Possession of Ammunition by a Person Prohibited ("PABPP").  Elmore was sentenced to a total of fifteen years at Level V incarceration, suspended after ten years for one year of Level III probation.  On appeal, Elmore argues that the Superior Court erred as a matter of law when it denied his Motion for Judgment of Acquittal as to the element of possession in both of the charges against him.  We disagree, and for the reasons stated herein, AFFIRM the judgment below.

(2)     On April 18, 2014, at approximately 1:00 a.m., Dover Police Officer Rankin responded to a call about a possible domestic dispute in room 201 at the Capital Inn Motel.  When Officer Rankin arrived at the Capital Inn, he observed a black male dressed in black clothing, later identified as Elmore, on the balcony of the second floor of the motel -- the same floor on which room 201 is located.

(3)     Officer Rankin proceeded to the second floor of the Capital Inn, but the individual he observed earlier was no longer present.  Officer Rankin and Delaware State University Officer Johnson knocked on the door of room 201 several times, but no one answered.  The officers observed a woman, later identified as Aisha Legrand ("Legrand"), poking her head out of a different room down the hall.  Officer Rankin escorted Legrand down to the lobby of the Capital Inn to conduct a field interview.

(4)     Soon thereafter, Dover Police Officer Wood arrived on the scene, and began checking the area for Elmore.  While Officer Rankin was interviewing Legrand, Elmore appeared in the lobby of the motel, and admitted to hitting Legrand, stating "Stop beating around the bush.  Tell them I hit you."

(5)     Officers Rankin and Wood removed Elmore from the lobby.  A search of Elmore's person revealed contraband.  Elmore was then handcuffed and taken into custody.  Elmore was placed in the back of Officer Wood's police car and driven to the location of Officer Rankin's vehicle.  During the drive, Officer Wood

did not question Elmore. However, Officer Wood testified that Elmore made an unprovoked statement, asking "to have his gun back that he left in the hotel room." Elmore told Officer Wood that the gun was "under the first bed as you entered the hotel room." Officer Wood testified that Elmore "just asked that he have it back. He stated that the victim and the children didn't know the firearm was in the room under the bed, didn't want to leave it in there with them." Later, Officer Rankin looked under the first bed in room 201, and "found a loaded sawed-off shotgun, one round in the chamber, one round beside it."[1]

(6) When Elmore was taken to the Dover Police Station, his criminal history revealed that he been convicted of the felony offense of Robbery Second Degree in June 2010. As a convicted felon, Elmore was prohibited from possessing a firearm or ammunition under 11 *Del. C.* § 1448(a)(1).[2] On September 29, 2014, a one-day bench trial was held in the Superior Court. After the State

---

[1] Elmore's sawed-off shotgun was admitted at the bench trial as State's Ex. 1. The two shotgun shells were live rounds and were also admitted into evidence at trial as State's Ex. 2.

[2] 11 *Del. C.* § 1448(a)(1) ("Except as otherwise provided herein, the following persons are prohibited from purchasing, owning, possessing or controlling a deadly weapon or ammunition for a firearm within the State: (1) Any person having been convicted in this State or elsewhere of a felony or a crime of violence involving physical injury to another, whether or not armed with or having in possession any weapon during the commission of such felony or crime of violence.").

3

presented its case, Elmore moved for a judgment of acquittal, which the Trial Court denied. The Superior Court found Elmore guilty of PFBPP and PABPP.[3]

(7) We review "*de novo* a trial judge's denial of a criminal defendant's Motion for Judgment of Acquittal to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the crimes charged beyond a reasonable doubt."[4]

(8) Section 1448(b) of Title 11 provides that "[a]ny prohibited person as set forth in subsection (a) of this section who knowingly possesses, purchases, owns or controls a deadly weapon or ammunition for a firearm while so prohibited shall be guilty of possession of a deadly weapon or ammunition for a firearm by a person prohibited."[5] A firearm is a deadly weapon within the meaning of the Criminal Code.[6] To prove constructive possession of a firearm, the State must show that the defendant "(1) knew the location of the gun; (2) had the ability to exercise dominion and control over the gun; and (3) intended to exercise dominion

---

[3] App. to Appellant Opening Br. at A26.

[4] *White v. State*, 906 A.2d 82, 85 (Del. 2011) (emphasis removed).

[5] 11 *Del. C.* § 1448(b); *Triplett v. State*, 2014 WL 1888414, at *2 (Del. May 9, 2014).

[6] *See* 11 *Del. C.* § 222(5) ("'Deadly weapon' includes a 'firearm', as defined in paragraph (12) of this section. . . ."); 11 *Del. C.* § 222(12) ("'Firearm' includes any weapon from which a shot, projectile or other object may be discharged by force of combustion, explosive, gas and/or mechanical means, whether operable or inoperable, loaded or unloaded. It does not include a BB gun.").

4

and control over the gun."[7]  Circumstantial evidence may prove constructive possession.[8]  As we have previously stated, establishing possession of a deadly weapon by a person prohibited "does not require presenting evidence that a deadly weapon was physically available and accessible at the specific time of arrest."[9]  The requirements for establishing PABPP are the same as those for establishing PFBPP.[10]

(9)    Elmore argues that there was insufficient evidence to conclude that he had constructive possession of the gun and ammunition in the motel room.  Elmore relies on *Lecates v. State* to argue that the State must establish physical availability and accessibility in addition to proving constructive possession.  Elmore misstates the law, because in *Lecates* we held that "[p]hysical availability and accessibility are *not* essential to establishing [possession of a deadly weapon by a person prohibited]."[11]

---

[7] *Triplett*, 2014 WL 1888414, at *2.

[8] *See id.*

[9] *Lecates v. State*, 987 A.2d 413, 420-21 (Del. 2009).

[10] *See* 11 *Del. C.* § 1448(b).

[11] *Lecates*, 987 A.2d at 421 (emphasis added).  In *Lecates*, we clarified that possession of a deadly weapon by a person prohibited and possession of a deadly weapon during the commission of a felony are analyzed differently.  "We apply a more limited definition of possession to [possession of a deadly weapon during the commission of a felony] than [possession of a deadly weapon by a person prohibited] because, unlike establishing [possession of a deadly weapon by a person prohibited], establishing [possession of a deadly weapon during the commission of a felony] requires evidence of physical availability and accessibility."  *Id.* at 418

(10) Next, Elmore contends that there was an insufficient nexus linking him to actually or constructively possessing the gun and ammunition. The Trial Court concluded that there was a sufficient nexus established by the State based on Elmore's statement, the dispatch concerning room 201, and overall circumstances that led to Officer Rankin retrieving a gun and ammunition from the exact spot where Elmore said the gun was located. Further, the Trial Court held that Elmore's possession of the sawed-off shotgun and the two live shotgun shells was "knowing" as required by 11 *Del. C.* § 1448 in view of Elmore's statement to Officer Wood about where to find the gun, and not wanting the gun to remain in the room.[12]

(11) Our decision in *Triplett v. State* is instructive on this point. There, the police found a loaded Colt .38 revolver in a man's jacket in an unoccupied house that the defendant was earlier seen leaving.[13] The gun was wrapped in a direct deposit slip, dated eight days before the date of the search, bearing the defendant's name and the address of the unoccupied house. Another pocket of the jacket contained a Delaware identification card also bearing the defendant's name and the

---

[12] 11 *Del. C.* § 231(c) ("A person acts knowingly with respect to an element of an offense when: (1) If the element involves the nature of the person's conduct or the attendant circumstances, the person is aware that the conduct is of that nature or that such circumstances exist; and (2) If the element involves a result of the person's conduct, the person is aware that it is practically certain that the conduct will cause that result.").

[13] *Triplett*, 2014 WL 1888414, at *1.

6

address of the unoccupied house. Although no fingerprints or DNA linked the defendant to the gun, the circumstantial evidence in the case was sufficient to convict him of PFBPP.[14]

(12) Here, Elmore contends that he never indicated the specific room where the gun was located, and thus there is an insufficient nexus linking him to the gun and ammunition. Elmore's argument is misplaced. Officer Wood testified that when Elmore indicated where the gun was stored, "he was referencing to Room 201." Thus, viewing the evidence in the light most favorable to the State, a reasonable trier of fact could find that Elmore knew the location of the gun because he told police exactly where to find it. Further, a reasonable trier of fact could find that Elmore had the ability and intent to exercise dominion and control over the weapon since he had placed the gun and ammunition under the bed, and had requested that police return his gun to him. That Elmore was not directly observed by police officers entering or leaving room 201 of the Capital Inn does not defeat the circumstantial evidence that the State did in fact present.

(13) Thus, the Trial Court properly concluded that, viewing the evidence in the light most favorable to the State, a rational trier of fact could find that Elmore did have constructive possession of both the firearm and the ammunition, and that

---

[14] *Id.* at *2.

he was guilty of PFBPP and PABPP beyond a reasonable doubt. Accordingly, we find no error in the Trial Court's denial of Elmore's Motion for Judgment of Acquittal.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is hereby AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice